GUS WILLIAMS v. THE STATE.

1. TRIAL—CHALLENGE.—A challenge to the array cannot be made by a negro on the ground that he is placed upon trial before a jury composed exclusively of white men, and cannot thus have a trial before a jury of his peers ; nor can such challenge be based on the ground that the white jury was not selected " without regard to race, color, or previous condition of servitude."

2. THEFT—EVIDENCE—A conviction will not be permitted to stand when based exclusively on testimony of a witness who is incapable of exercising a faculty necessary to a knowledge of the matter about which he testifies.

APPEAL from Smith. Tried below before the Hon. J. L. Camp.

Gus Williams was tried and convicted on an indictment

charging him with theft from a house. On the trial the defendant, who was a negro, presented his challenge to the array of jurors on the following grounds:

1. That, being a colored man of African descent, he was presented a jury of white men, when he was entitled to a trial by a jury of his peers; that there was a natural as well as social antipathy between the races, and he could not for that cause expect an impartial trial.

2. That the jury was not "selected without regard to race, color, or previous condition of servitude, as required by the Constitution of the United States and of the State of Texas."

The challenge was not permitted, to which defendant excepted.

Article 569, Code of Procedure, (Paschal's Dig., art. 3034,) is as follows: " The defendant may challenge the array for the following cause only: 'That the officer summoning the jury has acted corruptly and has willfully summoned persons upon the jury known to be prejudiced against the defendant and with a view to cause him to be convicted.' "

No briefs for appellant.

*A. J. Peeler, Assistant Attorney General,* for the State.

REEVES, ASSOCIATE JUSTICE.—The appellant, Gus Williams, having been convicted of theft from a storehouse, moved for a new trial on two grounds:

1. Because the verdict of the jury is contrary to and not responsive to the charge of the court.

2. Because the verdict of the jury is contrary to law and the evidence.

The motion was overruled, and the defendant excepted and gave notice of an appeal.

The defendant applied for a continuance of the case on the ground that he could not go safely to trial for want of

the testimony of two witnesses—Brown and Green—and a witness whose name is omitted in the application. The motion was overruled by the court, and the defendant. took a bill of exception to this ruling. It is not shown on what ground the motion was overruled. There is no appearance in this court for appellant by brief or otherwise. The application is defective on several grounds. The diligence used to procure the attendance of the witnesses is not stated. The application does not appear to have been either signed or sworn to by any one, and bears no file-mark by the clerk. The defendant had ample time to prepare for trial. He entered into recognizance September 29, 1874, to answer the charge against him, and was tried August 13, 1875. There was no error in refusing his motion to continue. (Paschal's Dig., art. 2987.)

It further appears from defendant's bill of exceptions that, after having exhausted his challenges to individual jurors, he then challenged the array, on the grounds stated in his motion, to wit:

1. "The defendant, being a colored man, of African descent, charged with a felony, is placed upon trial before a jury composed exclusively of white men, whilst he is entitled to a fair and impartial trial by a jury of his peers; that there being a natural as well as a social antipathy between the races in this country, it is believed that defendant cannot obtain a fair and impartial trial."

2. "Said jury is not selected without regard to race, color, or previous condition of servitude, as required by the Constitution and laws of the United States and of this State."

The motion was overruled and the defendant excepted.

It does not appear that the defendant was deprived of any right or privilege secured by the Constitution and laws to other citizens. He exhausted his challenges to individual jurors, as any other defendant may do, and after doing so his right to challenge the array must be

governed by the rules of law as applicable to all other cases under the same circumstances.

A challenge is either to the array or to a single juror. (Paschal's Dig., Code of Procedure, art. 3032.)

The grounds set out in the motion are not causes of challenge to the array.

It is not charged that the officer summoning the jury was guilty of any improper conduct. The code provides that the defendant may challenge the array for the following causes only: That the officer summoning the jury has acted corruptly, and has wilfully summoned persons upon the jury known to be prejudiced against the defendant, and with a view to cause him to be convicted. (Paschal's Dig., art. 3034.)

A defendant is not limited in the number of challenges for cause to individual jurors on any of the grounds specified in the statute, as that the juror has a prejudice against the defendant, or that he is disqualified for some other reason which is a cause of challenge.

In testing the qualifications of a juror the code provides that the juror shall himself be sworn to answer questions, and that any other proof may be heard touching the subject.

A defendant is not denied equal rights with other citizens when he is required to observe a uniform rule of procedure, general to all others in the administration of the criminal laws of the State.

The defendant's objection was to the array, and not to individual jurors, who were found on examination or other evidence to be incapable or unfit to try the case, by reason of one or more of the specified grounds of disqualification under the law.

The existence of certain causes of challenge was assumed, and the court was then asked to set aside the whole jury for these causes when they were not grounds of challenge.

A bias or prejudice in favor of or against the defendant,

Opinion of the court.

from whatever cause it may arise, disqualifies a juror, and when shown to exist it may be interposed as an objection to any number of jurors. There are other causes of challenge to a juror, but having no relation to this case, as may be supposed, they are only referred to without further notice. (See Articles 3040, 3041, 3042, Paschal's Digest.)

Though we have no reason to believe that the defendant was not tried by an impartial jury, we are of opinion that the judgment should be reversed for a different reason.

J. D. Barron, the State's witness, and the only witness examined on the trial, testified that the defendant came into the storehouse of the witness and his brother, J. Barron, at the town of Troup, and wanted to buy some pistol cartridges on a credit. The money charged to have been stolen by the defendant is described in the indictment as one five-dollar bill, one two-dollar bill, and a one-dollar bill, United States currency.

The witness testified that the two-dollar bill and the one-dollar bill were rolled up in the five-dollar bill, and that he had carried the last-named bill in his pocket for several days previously.

The other bills were received from a customer at his storehouse on the day, and only a short time before, the bills were stolen. It is not clear from the evidence whether the defendant was present at the time the bills were received or not. The bills were laid in a segar box, on a shelf in the house. The witness having occasion to leave his storehouse and go across the street on some business, left his house in his absence in charge of Mr. ———, the name not being given, who was sitting in the door of the storehouse. The defendant at this time was in the storehouse, sitting on a nail keg. When the witness returned to his storehouse after a short absence the bills were missing. Upon inquiry he was informed by Mr. Moore that the defendant had been trading with him and had paid him in silver. The defendant had also paid Mr. Heath a five-

dollar bill.  This bill the witness said he recognized by its being split in one end and about one-third the way.  He then went to the defendant, who gave him a two-dollar bill and a one-dollar bill and some silver.  He says he recognized the two-dollar bill by a certain patch on it, it having been torn and patched, but that he could not recognize the one-dollar bill.  This witness, being a blind man, had no way of recognizing the bills as he said except by the split in the five-dollar bill and the patch on the two-dollar bill; that he could not distinguish a currency or greenback bill from a bank bill, and that he did not know a bill of one denomination from another, (except fractional currency,) unless some one told him what it was; that he could not distinguish the defendant from any other person except by his voice; that he was slightly acquainted with the defendant.

This evidence was not sufficient to support a conviction for theft.  The bills were not identified as the bills described in the indictment, or currency bills of any kind, from any knowledge the witness had of such bills.  He did not know a bill of one denomination from another, (except fractional currency,) unless he was told what it was.  The persons who were referred to by the witness were not called to testify in the case on the trial as might have been done.  This may perhaps be done on another trial.

On these grounds we are of opinion that the motion for a new trial should have been granted.  The judgment is therefore reversed.

Reversed and remanded.