J. B. SWOFFORD AND A. MARKSBURY *v.* THE STATE.

1. EVIDENCE BY DEPOSITION. — The Code of this state authorizes a defendant in a criminal case to take the deposition of a witness who resides out of the state. See the opinion for the rules prescribed on this subject.

2. CONTINUANCE. — When every requirement of the statute has been complied with, a first continuance is a matter of right. Not so, however, in subsequent applications, unless it be affirmatively shown, not only that the process afforded by law has been sued out, but also that it has been served and returned into court. If sued out and not served and returned, the subsequent continuance is a matter for the discretion of the court below, determinable upon its inquiry whether the defendant's expectation of procuring the testimony is well founded; and the refusal of the continuance will not be revised by this court unless in the very plainest case of abuse of its discretionary power by the court below.

3. SAME. — DILIGENCE in a second application for a continuance is not shown by the fact that a commission to take a deposition outside the state, but at a place not more than 300 miles distant, had been sued out three months before the trial, but had not been returned. The defendant should not have waited such a length of time without taking further steps to obtain the testimony.

4. SPECIAL VENIRE — MISTAKE. — One Bible was summoned on a special *venire facias,* but in the copy served on the accused the name of *Biffle,* instead of *Bible,* appeared. The defendants moved the court to set aside the *venire,* on the ground that they had not been served with a copy of it. *Held,* that the motion was in effect a challenge to the array, which is maintainable only when the summoning officer acted corruptly and summoned persons prejudiced against the accused.

5. SAME. — Proper practice in such a case is to set aside the juror misnamed in the copy; and, inasmuch as the record fails to show anything to the contrary, or that the defendants were in anywise injured by the mistake, the presumption in favor of the action of the court below must obtain in this court.

6. SAME. — Two supplementary *venires* were ordered and summoned, to complete the panel, in consequence of the exhaustion of the original *venire,* and the defendants moved the court to set them aside "because not summoned according to law." The motion being overruled, they excepted, but their bill of exceptions fails to show wherein the law was disregarded. *Held,* that in this state of case the presumption obtains that the court below conformed to the provisions of the law.

APPEAL from the District Court of Bosque. Tried below before the Hon. D. M. PRENDERGAST.

The indictment charged the appellants and one J. D. Mayfield with the murder of J. G. Dixon, on July 21, 1876. Mayfield escaped trial by turning state's evidence.

Mayfield's evidence unfolds a murder of unusual premeditation, perpetrated under cover of legal process, to satiate private vengeance ; but it throws no light on the origin of the feud between Dixon and his assassins, except that one of them accused him of slandering a female relative.

It seems that all the parties had been residents of Johnson County, but that Dixon had removed to the county of Comanche.

Mayfield testified that on July 9, 1876, Marksbury told him that he and Swofford would start, the next day, "after Dixon," and witness volunteered to go with them. Marksbury said they "would get a warrant for Dixon."

The witness gave a minute account of their preconcerted

movements to get out of the neighborhood without attract-
ing observation.   At Cleburne, in Johnson County, Swof-
ford " swore out a warrant for the arrest of Dixon, charging
him with a libel on Emma Swofford;" Swofford remarking
that he " wanted the papers because that would make it look
more like law," and summoning Marksbury and witness as
guards.   Thereupon the party started for Comanche County.
While *en route*, Swofford repeatedly remarked that they
must come back through a rough country. · They passed
through the town of Kimball, in Bosque County, and, on
meeting Jeff Smith in the neighborhood, Swofford and
Marksbury pulled their hats over their faces, but, after
passing Smith, Marksbury turned back and had a talk with
him.

Proceeding to Mr. Clark's, in Comanche County, where
Dixon was living, the party stayed there from Thursday
night until the next Wednesday evening, when they arrested
him while he was eating his supper.   Witness entered the
room at one door, with a shot-gun, while Swofford and
Marksbury entered at another.   They read the warrant to
Dixon, and Marksbury told him to get up from the table;
but Mr. Clark told them to let Dixon finish his supper.
Dixon told them they need not have been so bold in arrest-
ing him; that, when they came to him with the law, he would
always submit.   Before arresting Dixon, Swofford and
Marksbury went from Clark's to the town of Comanche,
and on returning brought with them a new grass rope about
twenty feet in length, and about as large as witness' little
finger.

The same evening of the arrest they left Clark's, taking
Dixon with them on horseback, and tying his legs under
the horse; and the witness gives a detail of their move-
ments until they arrived at Hill Creek, in Bosque County,
and there camped.   About the middle of the afternoon,
Swofford and Marksbury left camp and were absent about

half an hour, during which time Dixon told witness that he would give his horse, saddle, and bridle, and bind himself in writing to leave the country, if they would turn him loose. Witness told this to Swofford, who replied, "Yes, he can promise now, when it is too late."

About an hour by sun the party saddled the horses, and Swofford and witness took them down the creek some 200 yards, where witness remained with them, and Swofford returned in the direction of the spot where Marksbury had been left with Dixon. But, before he left, witness asked him if he was going to give Dixon his "walking papers," or what he was going to do; to which he replied that he would leave it to Mr. Marksbury, and cautioned witness not to leave them, but to stay right there and keep quiet until he returned.

After the lapse of an hour or more, Swofford and Marksbury came to where witness was. Dixon was not with them, and witness asked where he was. They said he had got away, and at the same time cautioned witness not to talk so loud. Witness asked Swofford a second time what they had done with Dixon, and he said that he "had got away, and let us get away from here as quick as possible." Witness then asked Marksbury the same question, and he said that Dixon was hanging to a limb, by the side of a bluff, in a thicket.

The party then left, avoiding the road, and taking a circuitous route through the mountains. Just after crossing the Brazos River, Swofford said that would be a good place to let the people know that somebody had got away. This remark alarmed witness, and Swofford told him the matter would soon pass away, and nothing would be done about it. Marksbury rode Dixon's horse all the way back.

By several other witnesses the state proved the finding of Dixon's body, August 3, 1876, near by the camp on Hill Creek described by Mayfield. It was suspended to a tree

by a small grass rope, close to a rocky bluff. The testicles were cut off, and it was otherwise mutilated.

As to the arrest, the meeting with Jeff Smith, and in many other particulars, the testimony of the accomplice, Mayfield, was fully corroborated. No evidence appears in the record tending even to palliate the atrocity of the deed; but the defendants offered to prove that, shortly before the murder, Dixon had defamed the daughter of Swofford and the wife of Marksbury. The court ruled out such proof, except the general fact that Dixon and Swofford had had a misunderstanding on account of something the former had said about the latter's daughter, who, it may be correct to infer, had become the wife of Marksbury.

The jury found both of the appellants guilty of murder in the first degree, and judgment of death was entered up.

The opinion of this court and the last head-note disclose all material facts relative to the continuance refused and to the several special *venires*.

*Bean & Thomas*, for the appellants.

*George McCormick*, Assistant Attorney General, and *L. H. Coon*, County Attorney of Bosque County, for the State.

WHITE, J. The two appellants in this case, John B. Swofford and Allen Marksbury, were indicted, with one J. D. Mayfield, in the District Court of Bosque County, for the murder of one J. G. Dixon. The murder is alleged to have been committed on July 21, 1876, by hanging and stabbing the said J. G. Dixon.

On January 25, 1877, when the case was first called for trial, the defendants were duly arraigned, pleaded not guilty, and applied for and obtained a continuance on their affidavit. The record does not disclose the grounds of this first application for continuance. At the next term of

court, a special *venire* of sixty men having been previously ordered for the trial of the case, it was, on July 26, 1877, again reached and called for trial, when defendants moved to quash the indictment; which motion being overruled, defendants Swofford and Marksbury filed a second application for a continuance. This application was also overruled by the court. The county attorney then entered a *nolle prosequi* dismissing the case as to defendant J. D. Mayfield, he having turned state's evidence, and Swofford and Marksbury were placed upon trial. The trial resulted in their conviction of murder in the first degree, the penalty being death by hanging.

We find no error in the action of the court in overruling the motion to quash the indictment. When subjected to the tests prescribed by our statutes and decisions, and the recognized standard authorities in this country, it is believed to be amply sufficient, and not obnoxious to the objections urged against it in the motion.

The questions we propose to notice and discuss are those which are presented most prominently by bills of exception, in the assignment of errors, and in the brief of counsel for appellant. These questions are:

1. The correctness of the ruling of the court in refusing the continuance.

2. The correctness of the ruling of the court with reference to the questions raised and incident to the manner of selecting the jury to try the case.

It will be remembered that the application for continuance was the second one which had been made by defendants in this case. This affidavit is as follows: " They say that they cannot go safely to trial at this term of the court for the want of the testimony of James Wilson, who resides in Pickens County, Indian Nation. They say that they have used due diligence to procure the testimony of said witness in this case; they filed with the district clerk of

Bosque County, on April 30, 1877, their affidavit setting forth the facts which they could prove by said witness, Wilson, and their materiality, and that said testimony could not be procured from any other source. They also say that on said 30th day of April, A. D. 1877, they propounded interrogatories to said witness, Wilson, and on the said last-mentioned day and date they filed said interrogatories with the district clerk of Bosque County, Texas; they further say that L. H. Coon, county attorney of Bosque County, Texas, had indorsed on said interrogatories his acceptance of service and waiver of copy; they further say that said county attorney filed crosses to said interrogatories. They further say that the district clerk of Bosque County, Texas, on the 3d day of May, A. D. 1877, issued his commission, together with certified copies of said interrogatories and crosses, directed to any judge of a court of record or commissioner of deeds for Pickens County, Indian Nation, commanding or empowering them, or either of them, to cause the said witness, Wilson, to come before them, or either of them, and answer the said interrogatories and crosses. They further say that, on the said 3d day of May, 1877, the said district clerk placed said commission and the certified copy of interrogatories and crosses, together with the officers' fees for taking, in an envelope securely sealed, which envelope was properly stamped and addressed to any judge of a court of record or commissioner of deeds for Pickens County, Indian Nation, and said package thus sealed and addressed was, on the said 3d day of May, 1877, placed in the post-office, in the town of Meridian, Bosque County, Texas, and was forwarded by due course of mail. They further say that said deposition has not been returned to this court, the reasons why they know not. They expect to prove by the said James Wilson that he is intimately acquainted with the said J. G. Dixon, charged to have been murdered by defendants on July 21, 1876; that the said

James Wilson saw and conversed with the said J. G. Dixon, on August 15, 1876, in Pickens County, Indian Nation. Affiants further say that the said testimony is material to their defense; and that said witness is not absent by the procurement or consent of affiants; and that the testimony cannot be procured from any other source; and that they have reasonable expectation of procuring said testimony at the next term of court; and that the application is not sought for delay, but that justice may be done."

Our law authorizes the taking of depositions in a criminal case, at the request of the defendant, when the witness resides out of the state. Pasc. Dig., art. 3231. The mode of procedure in such cases is thus provided by statute as follows:

" Art. 3233. Depositions of a witness residing out of the state may be taken before the judge or chancellor of a superior court of law, or before a commissioner of deeds for this state who resides within the state where the deposition is to be taken."

"Art. 3235. The rules prescribed in civil cases for taking the depositions of witnesses shall, as to manner and form of taking and returning the same, govern in criminal actions, when not in conflict with the requirements of this Code.

" Art. 3236. The same rules of procedure as to objections to depositions shall govern in criminal actions which are prescribed in civil actions, when not in conflict with this Code.

" Art. 3237. When the defendant desires to take the deposition of a witness at any other time than before the examining court, he shall, by himself or counsel, file with the clerk of the District Court a statement on oath setting forth the facts necessary to constitute a good reason for taking the same, and in addition thereto state in his affidavit that he has no other witness by whom he can prove the facts he desires to establish by the deposition."

Now let us return to the affidavit. We propose to exam-

ine it with reference to the ascertainment of two important facts, which, in our opinion, will determine the sufficiency of the application for a continuance, to wit: First, is the affidavit sufficiently certain and definite to the extent required by law? Second, does it show the diligence required by law?

It is to be noted that the affidavit states that the witness resides " in Pickens County, Indian Nation ;" that the commission to take the deposition was addressed, and so, also, were the commission and certified copies of the interrogatories, when placed in an envelope to be mailed, addressed, " to any judge of a court of record or commissioner of deeds for Pickens County, Indian Nation." What " Indian Nation?" This court judicially knows that there are four nations of Indians — to wit, the Choctaw, Cherokee, Chickasaw, and Creek nations — all living in what is known and designated upon our public maps as " the Indian Territory," north of Texas and west of Arkansas and Missouri and south of Kansas, and that our statutes authorize the governor of Texas to appoint in each of these four nations a suitable number of discreet persons, not to exceed four, as commissioners of deeds, etc.    Pasc. Dig., art. 3767.    But this court cannot know which one of these nations is meant when the term " Indian Nation " is used, nor can this court take judicial cognizance of the fact that " Pickens County " is a county or subdivision of any one of the four nations, nor, if so, of which one.    *Ellis* v. *Parker*, 8 Texas, 206 ; *Russell* v. *Martin*, 15 Texas, 238 ; *Whitlock* v. *Castro*, 22 Texas, 113.

From the foregoing we conclude that the commission to take the deposition of the witness Wilson, even if not defective because not addressed to the officers named in the statute, was too indefinite and uncertain, in and of itself, to support the shadow of a claim for diligence such as the law requires on an application for continuance.    But again,

waiving for the sake of argument the objections above taken, and still we are of opinion that the allegations in the affidavit would not show sufficient diligence.

The rule seems to be now well settled that on an application for a first continuance, where the affidavit complies with each and all of the statutory requirements, the granting of the continuance is a matter of right, and not one resting in the discretion of the court.    Pasc. Dig., art. 2987 ; *Austin* v. *The State*, 42 Texas, 345 ; *Dinkens* v. *The State*, 42 Texas, 250 ; *Shackelford* v. *The State*, 43 Texas, 138 ; *Sheffield* v. *The State*, 43 Texas, 378.

In subsequent applications, provided for by article 2988 of Paschal's Digest, however, we are of opinion that the application is not a matter of right, save in those cases only where it is shown affirmatively that such process as the law has provided and afforded had been sued out, and not only sued out, but actually served and returned into court.    In such case, we apprehend, a party, even on a second application, would rightfully be entitled to a continuance.    But suppose he has promptly availed himself of the process which the law grants, but that the process has not been served and returned.    In such a case it seems equally clear to us that he is not entitled to the continuance as a matter of right ; it then becomes a discretionary question with the court.    The court will then inquire whether or not the defendant's affidavit, " that he has a reasonable expectation of procuring the testimony at the next term of the court" (Pasc. Dig., art. 2988), is founded in truth and reason as well as in fact.

To illustrate : We can well imagine how a party, with the dread consequences of an indictment and a near prospect of trial for murder impending over him, might, in due and ample time, apply for and procure a commission to take the deposition of a party in Pickens County, Indian Nation, or

even Arkansas or any other state; he does, in a word, all that is necessary to get the testimony, except, perhaps, find such a party as the witness named residing in the county and state to which the commission was sued out and sent. In fact it may be probable, from surrounding circumstances, that such a party as the witness named never in fact resided there. Will it be contended, in such a case, though he swears to all the law has literally required of him, that his continuance is a matter of right, or that justice and our law would accord it to him? We cannot believe that the legislature ever passed, much less intended to sanction, a statute liable to such a construction.

When the process has been availed of in time, but has been returned not served, or has not been returned, in either such case, we think, the lower court has the right to decide the question in the exercise of its sound discretion; and in doing so would require of the party, to say the least of it, some equitable showing that his expectation that he would be able to procure the testimony at the next term of court was in fact reasonable. And under such circumstances, where the lower court in the exercise of its discretion has refused the continuance, this court will not revise and reverse the action unless in the very plainest case of abuse of the discretionary power.

In their brief, defendants' counsel say: "We think the fact that the interrogatories, as shown in the application for continuance, were forwarded, near three months before the day of trial, to a point not over 300 miles distant, shows ample statutory diligence, especially where defendants are charged with capital felonies." On the contrary, we are of opinion that, the depositions not having been returned in the time they should reasonably have been, defendants should not have waited three months, but, to have been justified in claiming that they had exercised the

diligence necessary, they should have taken other steps to have procured the testimony. The court did not err in overruling the application for a continuance.

Two objections are urged to the action of the court in the selection of a jury to try the case: First, that the court refused to quash the special *venire* of sixty men summoned under the original *venire facias;* and, second, for supposed error committed by the court in ordering special *venires* of citizens to be summoned to fill up the jury when the original number of sixty had been exhausted.

So far as the first objection is concerned, the statute of 1876 (Acts Fifteenth Legislature, 82, sec. 23) provides the practice as it now obtains in this state for special *venires.* The statute reads:

" Whenever a special *venire* shall be ordered, the names of all the persons selected by the jury commissioners to do service for the term at which such *venire* is required shall be placed upon tickets, of similar size and color of paper, and the tickets placed in a box, which shall be well shaken up ; and from this box the clerk, in the presence of the judge, in open court, shall draw the number of names required for said special *venire*, and the names of the persons so drawn shall be attached to the writ of special *venire facias*, and the persons named shall be summoned by the sheriff, or other lawful officer, by virtue thereof; *provided*, that, when the whole number of jurors selected by the jury commissioners for any term of the court shall be less than the number required upon said special *venire*, the judge shall order the sheriff to summon a sufficient number of good and intelligent citizens, having all the qualifications of jurors prescribed in this act, to supply the deficiency," etc.

After the *venire* has been summoned, it is made the duty of the sheriff to return the special *venire facias*, with his action upon it, to the clerk of the court. Pasc. Dig., art. 3020.

The statute further provides that "the clerk, immediately after receiving the lists of the names of the persons summoned under a special *venire facias*, shall make a copy thereof and furnish the same to the sheriff, who shall deliver such copy to the defendant; and no defendant in a capital case shall be brought to trial until he has had one day's service of a copy of the names of persons summoned under a special *venire facias*," etc. Pasc. Dig., arts. 3021, 3022.

The facts upon which the objection to the jury in this case were predicated are stated by the following words in the bill of exceptions, to wit: "During the impaneling of the jury the name of J. L. Biffle was found upon the copy of the *venire* served upon the defendants, numbered 53, and the name of J. L. Bible was found upon the original *venire*, numbered 53; the name of said Biffle not being anywhere upon the said original *venire*, and the name of said Bible not being anywhere upon the copy of the *venire* served upon the said defendants. Whereupon defendants moved to quash said *venire* and set it aside, on the ground that they had never been served with a copy of the *venire* in said cause; which was overruled by the court, to which defendants excepted."

The motion, it seems, was to quash the whole *venire*, and was tantamount to a challenge to the array. But one cause, and one only, is allowed under our statute as ground for challenge to the array, and that is "that the officer summoning the jury has acted corruptly, and has willfully summoned persons upon the jury known to be prejudiced against the defendant, and with a view to cause him to be convicted." Pasc. Dig., art. 3034; *Williams* v. *The State*, 44 Texas, 34; *Bowman* v. *The State*, 41 Texas, 417.

The bill of exceptions does not show whether defendants challenged this particular juror or not, or were even compelled to pass upon him by the court. Nor does the record

show that defendants exhausted their challenges before a jury was finally completed, or that they were in any other manner injured by the mistake in the name of this particular juror. In the absence of anything being shown to the contrary, this court will presume that the action of the court below was correct. The practice seems to be in such cases, when a mistake has been made in the name of the juror, to have such juror set aside, on motion of either the state or defendant.

In *The United States* v. *Wilson and Porter*, where, before the exhaustion of the panel, several jurors where called who had been returned on the *venire* by wrong names, the court said "the jurors cannot be sworn." 1 Baldw. 83. And so, in calling the jury, the name of one of the jurors called was by mistake omitted in the copy of the panel delivered to the prisoner; whereupon, in behalf of the prisoner, objection to his being sworn was made. Kilpatrick, C. J., said: "Pass him by, and call the jurors according to the list delivered to the prisoner." *The State* v. *Powell*, 2 Halst. 246. The names of the jurors who tried this case are set out in full in the judgment, and the name of the juror objected to does not appear amongst them.

With regard to the exceptions saved to the two special *venires* ordered by the court after the original *venire* was exhausted, in the absence of any evidence in the record to the contrary, we will also, in this instance, presume that the court acted in conformity with the provisions of the act of the fifteenth Legislature (page 82, section 23), as heretofore quoted in full in this opinion, which section, together with the preceding section (22), warranted the course pursued in the selection of jurors to fill up the panel.

We see no error committed by the court in organizing a jury to try these defendants.

The charge of the court was an able exposition of the law applicable to the facts. No additional instructions were

asked by the defendants. For aught that appears in the record, we are constrained to believe that the defendants have no just cause to complain at the result of this trial. There is, in our opinion, no reasonable doubt of the guilt of the accused. The evidence, to our minds, is amply conclusive that they were the guilty parties who perpetrated a most horrid murder by hanging and then mutilating the body of J. G. Dixon, who was, at the time of his murder, a defenseless prisoner, arrested and held by them in custody by virtue of the process of the law.

Fully impressed with the solemnity and importance of our action in the premises, we feel that duty, justice, and the law require that the judgment of the court below be in all things affirmed.

*Affirmed.*