## A. J. MOORE v. THE STATE.

### No. 2646. Decided February 25, 1903.

**1.—Continuance—Handicapping Defendant's Witness by Keeping Him in Jail.**

In the application for continuance, where it was claimed that the desired witness was kept in jail by the State in order to deprive defendant of his testimony, upon the pretense that he would also be indicted for the same offense; Held, there is no rule of law authorizing a continuance in order to procure the testimony of said witness at some future time, should he not be indicted.

**2.—Same.**

Of course, on a proper showing, the State would not be permitted to hold a prosecution over such witness merely for the purpose of handicapping the witness in his testimony or depriving defendant of the benefit of his testimony. But, where no such showing is made, and where it appeared that the witness had been brought from jail and tendered to defendant, who declined to use him, this was sufficient answer to the motion to continue.

**3.—Murder—Evidence—Defendant's Animus.**

On a trial for murder, it is admissible, as tending to show defendant's animus towards deceased, to prove a conversation between defendant and the witness in which defendant declared his intention of following deceased and his fiancee, whom deceased was escorting to her home from church, and what defendant said in regard to having friends and money in case he raised a disturbance with deceased.

**4.—Same—Evidence.**

On a trial for murder, where no conspiracy was shown between defendant and the party from whom he got the pistol with which the killing was done, it was error to admit testimony to the effect that the party from whom defendant got the pistol had procured the pistol from a third party in a clandestine manner.

**5.—Same—Conspiracy—Charge.**

If there was any evidence of a conspiracy between defendant and the party from whom he procured the pistol with which the killing was done, the court should have charged the jury upon the issue of a conspiracy with proper limitations of the evidence in regard thereto.

Appeal from the District Court of Hill. Tried below before Hon. W. Poindexter.

Appeal from a conviction of murder in the second degree; penalty, forty-five years imprisonment in the penitentiary.

Appellant was charged by the indictment with the murder of Mat Hunt, on the 31st day of August, 1902, by shooting him with a pistol.

The proof showed that both appellant and deceased were negroes and resided in Hillsboro, and that the homicide occurred on Sunday night. That on the night in question Susie Jones, colored, and her sister Mary Roberts had left the servant room of O. G. Bowman, where they were living, and went to church, which was situated in what is known as Freetown, in the city of Hillsboro. The proof further showed that appellant and deceased had been for some time paying their attentions to Susie Jones, and that on this particular occasion the deceased was also attending the same church; that at some stage during the proceedings Susie Jones got up and went out for the purpose of going home and was joined on the outside of the building by the deceased, whose intention it was to accompany her back to the servant room; that appellant, who was on the outside of the building and did not come in on seeing the deceased and Susie Jones together, at once approached them

and wanted to know what that meant, asking the girl at the same time who she was going home with. Being told by her that she was going with the deceased, the appellant replied that he guessed not, at which time the deceased and the girl proceeded on the way, but after going a short distance they were again approached by appellant, who caught the girl by the arm, telling her at the same time that she was not going. She remonstrated and again told him that she was, when she was then assaulted by appellant, who slapped her in the face.

The witness Hob Baker saw them at the church, and testified he saw the deceased with Susie Jones and the appellant walked up to her and said, "Ain't I going home with you?" and she says, "No; Mr. Mat is going home with me." "And I says, 'A. J., if she wants to go home with Mat what do you want to raise any fuss for? Let Mr. Mat go with her.' And then Mat and Susie walked on, and then A. J. tried to get me to go with him up to Susie's house. He says, 'I am going up there,' and I said, 'Don't go up there and raise and disturbance up to Mr. Bowman's house, and defendant said, 'I have got friends,' and I said, 'You haven't got any money to throw away.' When she refused to go with him he slapped her. When he slapped her Mat did not say anything, but he said, 'Any other time after to-night you can go with her, but I have got her company for to-night.'"

The proof showed that the deceased and the girl proceeded on home and that appellant at the time of this separation turned and went back to the church and joined Mary Roberts, who testified that she was at the church and the appellant came to her and asked to take her home. Witness told him that he could if he would not raise any fuss. Witness further stated: "A. J. [who was appellant] and Mat had a few words down at the church. Mat was with Susie, and A. J. says, 'What does this mean?' and says 'Which one of us is going home with you?' and she says, 'Mr. Mat;' and he says, 'I reckon not,' and then Mr. Mat and Susie went off. When we were going on home defendant asked me 'What does Susie mean by doing me that way?' and asked me how many times Mat had been with Susie." The proof showed that witness and appellant went on to the servant room where the deceased and Susie Jones had already arrived. The latter was seated on a box in the yard near the room; appellant and witness passed them by and went on in the room where they sat down. In about fifteen minutes after this Alex Anderson arrived and went in the room and sat down. Up to this time appellant had raised no disturbance and had not attempted to harm anybody, but after Anderson arrived appellant then became very solicitous about seeing and talking with Susie Jones, who was still seated on the box with the deceased. At this point it would be well to refer to the testimony of Susie Jones, who testified as follows: "They were all sitting there in the house and Alex asked the defendant what was the matter, and defendant said, 'Nothing, but Mat come home with Susie,' and then Alex taken the pistol out; then A. J. asked him to let him have it and he taken it out of Alex's hand, and then he sent my sister

to the door and told her to tell me to come there, and I did not say anything and he sent her back again, and then I told her to tell him I was not coming, and then he got up and come out of doors himself. When he came out he walked up to me and slapped me, and then Mr. Mat got up when he hit me, and Mr. Mat said, 'A. J., I have not got anything against you, but you ought not to hit the girl.' And then A. J. come around on the other side of me and shot him. After he was shot Mat staggered along between that little aisle and fell right out there at the corner of Mr. Bowman's back porch."

Describing the conduct of appellant and Alex Anderson the witness further said: "A. J. and Alex were in the house when he got the pistol from Alex; neither one of them spoke about the pistol; Alex pulled it out and A. J. asked him to let him have it. Alex just sat there with it in his hands and A. J. just reached over and took it out of his hands, and when he got the pistol he put it in his bosom. Alex did not try to keep him from taking the pistol. I don't know who the pistol belonged to. A. J. has talked to me several times and said he did not want me to go with Mat. When Alex took the pistol away from him after the shooting A. J. said, 'Let me alone, Alex; don't bother me; let me alone.'

The testimony of Mary Roberts was substantially like that of Susie Jones.

The sheriff testified that defendant told him the reason why he shot deceased was that he had spent too much money on that girl and did not intend to let anyone else go with her.

The above statement is taken from the brief filed for the State.

*Chas. M. Smithdeal* and *Horton R. Porter,* for appellant, filed an able and elaborate brief and argument in the case.

*G. F. Greenwood,* County Attorney; *B. Y. Cummings,* Assistant County Attorney, and *Howard Martin,* Assistant Attorney-General, for the State.

HENDERSON, JUDGE.—Appellant was convicted of murder in the second degree, and his punishment assessed at confinement in the penitentiary for a term of forty-five years; hence this appeal.

The record shows that the killing occurred on Sunday night. Deceased and appellant had both gone to church. Deceased before or about the time church was out started to walk home with Susie Jones, who, it appears, was the sweetheart or affianced of appellant. Appellant objected to this. However, Susie persisted in returning with deceased, Mat Hunt, when defendant slapped her in the face, and some words passed between him and deceased. After Susie and deceased had gone, appellant followed with Mary Roberts, the sister of Susie Jones, who lived at the same place; that is, at the servant house of one Bowman, in the town of Hillsboro. When appellant and Mary arrived, they found deceased and Susie sitting on a box in the yard, some eight or ten

yards from the servant's house. Appellant and Mary went into the servant's house, and after they had been there some ten or fifteen minutes, Alex Anderson came to the servant's house, and sat down in the doorway. Directly he pulled out a pistol, and laid it in his lap, and appellant asked him to give it to him. He did not hand it to him, but appellant reached over and took it out of his hand. Appellant then asked Mary to tell Susie to come in; that he wanted to talk with her. This she declined to do. Appellant then went out to where she was, and in a very short time a shot was fired, which killed deceased. The State's testimony tended to show that deceased and Susie were still sitting on the box when appellant came out. He came up to where they were, and slapped Susie, and deceased got up from where he was sitting and said, "You ought not to hit the girl." Appellant then came around near to deceased and shot him, the deceased doing no act and making no demonstration of hostility at the time. After the shooting appellant went back to the house, and Alex Anderson succeeded in taking the pistol from him. According to appellant's theory, which is supported by his own evidence, when he went out where Susie was he found her sitting in the lap of deceased. She being at the time engaged to marry appellant, this incensed him and he slapped Susie in the face. Mat Hunt, deceased, jumped up, saying, " 'That is all right, A. J., I am your friend,' and ran his hand in his bosom low down about the waist of his pants, like was was about to draw a pistol, and defendant, thinking he was about to draw a pistol in order to kill or hurt him, pulled his pistol and shot deceased." This is a substantial statement of the facts of the case.

Appellant made a motion to continue the case, his motion being predicated on the allegation that Alex Anderson had been arrested, charged with complicity in the same offense, and that he had not been indicted, but that the State was keeping him in jail under the pretense that it would indict him, in order to deprive appellant of the benefit of his testimony; that, if the case was continued said Anderson would not be indicted, and appellant would have the benefit of his testimony, untrammeled by the shadow of any prosecution. It is further shown that the offense was committed on the 31st of August; that this was the first term of the court since the homicide; and that the indictment was only returned against appellant on the 2d of October, and this case set down for trial on November 6th. Appellant further offered to prove that an investigation would show that there was nothing against said Anderson, and that the State merely kept said prosecution pending against him in order to deprive appellant of the full benefit of his testimony. This offer was in general terms, no witness being named by whom appellant expected to prove this very serious accusation against the State. The court explains the bill of exceptions and the overruling of the application for continuance by stating "that the grand jury was still in session, and the witness Alex Anderson was still in jail on

the same charge, and no bill of indictment had yet been returned against him; and further, he had the said Alex Anderson brought out of jail, and tendered him to defendant as a witness, and defendant had the opportunity of privately consulting with said Anderson, and after such consultation declined to put him on the stand." If Alex Anderson had been indicted with appellant for said homicide, or indicted separately for the same offense, it would have been competent for appellant to have claimed a severance, and, without objection on the part of said Anderson, to have him tried first, and on his acquittal he might have made a witness of him. But we know of no rule of law providing that, where a party who might be implicated or thought to be implicated in the same offense, and who had not been indicted, the defendant could claim a continuance in order to procure the testimony of said witness at some future time should he not be indicted. Indeed, the statute in reference to severance provides, and the decisions hold, that a severance, without some other sufficient cause, shall not operate as a continuance to either party. Of course, on a proper showing the State would not be permitted to hold a prosecution over such witness merely for the purpose of handicapping the witness in his testimony. Price v. State (Texas Crim. App.), 40 S. W. Rep., 596. Here, however, appellant makes no showing as to by what witness he can prove that the State was merely keeping the witness under the shadow of prosecution for the purpose of depriving defendant of the benefit of his testimony. If he had alleged some facts, and tendered some witnesses by name, another question would arise. As presented, it occurs to us that the tender of the witness to appellant was a sufficient answer to his motion to continue the cause. If the witness had testified in favor of appellant to the effect that there was no conspiracy existing between him and said appellant in reference to the homicide, it would have exculpated the witness; and, if appellant failed to use the witness simply because the witness was then under an accusation in regard to the same offense, after he was tendered to him, appellant has no one to blame but himself. At any rate, the law gives him no relief under such circumstances. Williams v. State (Texas Crim. App.), 44 S. W. Rep., 1103.

By appellant's second bill he questions the action of the court admitting the testimony of Hob Baker as to what occurred between appellant and Susie Jones at the church, when deceased started home with her. All this occurred when deceased and appellant were present, except what appellant said to witness Baker in regard to going to Bowman's after deceased and Susie Jones left. This testimony was admissible to show the animus of appellant towards deceased in regard to his associating and going with Susie Jones. When appellant declared his intention of following the parties there, the witness Baker declined to go with him, but told him not to go up there and raise a disturbance at Bowman's because he would have to pay for it. Appellant replied to this that he had friends, whereupon witness told him he did not have

any money to throw away, if he did have friends. We think this testimony, as said above, had a bearing upon the animus of appellant.

When the witness Adam Oliver was on the stand, the State was permitted to prove by him that he lived several miles in the country, and appellant and Alex Anderson and he were cousins; that on Saturday night, before the homicide, which occurred on Sunday night, Alex stayed all night at his house; that witness Oliver had a pistol in the bureau drawer in the room where Anderson stayed; that on the next day—which was the day of the killing—Anderson left the house of witness, and afterwards, on the same day, witness found his pistol in the possession of Anderson; that he did not consent for Anderson to take the pistol, and did not know he had taken it; that later in the day he took the pistol away from Anderson, and left it in the house of Eliza Davis, but after that, and on the same day, Alex Anderson told him he was coming back and stay all night at his house that Sunday night, and he gave his pistol to him for the purpose of carrying it back to his home; that shortly after this Anderson and witness separated, and witness did not see him any more. The evidence shows that this was the pistol which Alex Anderson gave appellant that night at the scene of the homicide at Bowman's, and was the pistol with which deceased was killed. This testimony was objected to by appellant on the ground that it was not shown that defendant had any connection with or knowledge of the acts of said Anderson in procuring said pistol; that said evidence was highly prejudicial to defendant, because the jury would naturally infer from its admission in evidence that it had some connection with or bearing on the case; and that the same could not be considered by them for any purpose other than to lead them to believe that at the time defendant went to the place of the killing he had already made arrangements with said Anderson to have a pistol there for him with which to do the killing; and that the pistol had been procured by said Alex Anderson by prearrangement between him and appellant. The court explains this bill by stating: "That defendant proved by the witness the fact that witness gave the negro Anderson the pistol to carry back home. The other evidence was admitted to show that Anderson had possession of the pistol before the homicide, it being a question as to whether defendant knew this, and the time at which he received it. This evidence could not have prejudiced the jury against the defendant, as they only found him guilty of murder in the second degree." The explanation of the court does not show that defendant brought out any testimony with regard to said pistol, and its procurement, prior to the introduction of this subject by the State. Of course, after the State had introduced evidence of the procurement of the pistol by Anderson at the house of Oliver, and in a clandestine manner, naturally appellant would want to show that subsequently Oliver knew that Anderson had the pistol, and consented for him to keep it. So we do not think it was important to show how Anderson procured the pistol, unless his procurement of the pistol was by virtue of a conspiracy shown to exist be-

tween him and appellant; and, in the absence of such conspiracy, the only issue was, not how Anderson got the pistol, but simply how appellant got it. The court further explains that it was a question as to whether defendant knew of the procurement of the pistol, and the time at which he received it. How this became a question, the court does not explain. If we recur to the statement of facts, outside of the fact that Anderson came to the house where the homicide occurred, and gave the pistol to appellant, or afforded him the opportunity to take it, there is absolutely no evidence showing that appellant knew Anderson had any pistol, much less that he had arranged with him beforehand to procure a pistol. Of course, if it be conceded that the testimony in regard to Anderson bringing the pistol to the house where the homicide was committed, and giving it to appellant, is evidence of some prearrangement between him and Anderson to procure that pistol for the purpose of the homicide, then the requested charge asked by appellant, submitting the issue of conspiracy with reference to the pistol, which is complained of in another bill of exceptions, should have been given, in order that the jury might determine whether appellant was to be affected by the procurement of said pistol on the part of the witness Anderson. If there is no evidence of a conspiracy in regard to the procurement of said pistol, the court should not have admitted the testimony of Oliver with reference to its clandestine procurement. If there was evidence of a conspiracy between appellant and Anderson with reference to the procurement of said pistol for the purpose of the homicide, then the court should have given an instruction on that subject, in order that the jury might determine the question. If they determined there was no such conspiracy, defendant would not be injuriously affected by the circumstances in regard to the procurement of the pistol. The court further says that this evidence could not have prejudiced the jury against defendant, as they only found him guilty of murder in the second degree. We do not think it follows that, because the jury failed to find appellant guilty of murder in the first degree, the testimony did not prejudice appellant. We can not always tell what evidence or circumstance may actuate a jury. This evidence with reference to the pistol may have influenced them to find appellant guilty of murder in the second degree, or may have influenced them with reference to the punishment they inflicted. It occurs to us that the testimony was clearly of a hurtful character. The delivery of the pistol by Anderson and the circumstances attending it were of a sinister character, and well calculated to make the jury believe that something had transpired between said witness Anderson and appellant at some previous time in regard to the pistol—that either appellant must have spoken to Anderson at the church in regard to the pistol, or have sent him word through some one else. We say the testimony would naturally suggest this line of thought to the jury. And then, to reinforce it with the circumstances connected with the procurement of the pistol by the witness Anderson on the night before was calculated to make the jury believe that, at

least in the mind of the court admitting this testimony, appellant was connected in some way with its procurement. But, as stated, the record furnishes no evidence of this, and, outside of the circumstances attending the delivery of the pistol by Anderson to appellant at the very time or just before the homicide, there is nothing to suggest any prearrangement in regard to the pistol. So, we hold that, in the first place this testimony should not have been admitted; or, certainly if admitted, it should have been limited by a charge of the court.

Because of the admission of this improper testimony, which was of a hurtful character, and the failure of the court to give a charge limiting it, the judgment is reversed and the cause remanded.

*Reversed and remanded.*