### A. J. MOORE v. THE STATE.

No. 3608.   Decided June 19, 1907.

MOTION FOR REHEARING OVERRULED
February 12, 1908.

1.—Murder—Jury and Jury Law—Challenge for Cause—Race Discrimination—
. Former Conviction—Bill of Exceptions.

Upon trial for murder, where both the defendant and the deceased were negroes, and but one white witness testified for the State, whose testimony was not material; and the jurors upon their voir dire stated distinctly that they had no prejudice against defendant, but that they would not accord to a negro's testimony the same degree of credit that they would accord to that of a white man, the race question could have had no effect in the case. Besides the bill of exceptions reserved to the taking of the objectionable juror did not show that he was objectionable; and the fact that said juror knew of defendant's former conviction, would not make him a prejudiced or unfair juror.

2.—Same—Misconduct of Jury—Allusion to Former Conviction.

Where upon trial for murder there was evidence of a former trial, and it also appeared that some of the jurors knew of a former conviction, but it did not appear that any discussion was had of this matter in the jury room, and the most that could be said was that it was casually referred to; and it did not seem that such reference had made any impression on any member of the jury, there was no such misconduct under article 823, Code Criminal Procedure, prohibiting an allusion to a former conviction which constituted reversible error. Following Baines v. State, 43 Texas Crim. Rep., 490; 66 S. W. Rep., 847; Gaines v. State, 8 Texas Ct. Rep., 616. Distinguishing Horn v. State, 50 Texas Crim. Rep., 404; 17 Texas Ct. Rep., 271

3.—Same—Substituting Indictment—Nunc Pro Tunc Order—Notice.

Upon trial for murder there was no error to enter a nunc pro tunc order substituting the lost indictment upon motion by the State, said motion for substitution stating that the order of substitution which had been made at a previous term had not been signed by the judge. The order on the minutes although not signed by the judge was valid and gave defendant notice and it was not necessary to serve defendant with special notice; nor was such nunc pro tunc order invalidated by embracing other matters which the original order should have included.

4.—Same—Argument of Counsel—Conduct of Defendant.

Upon trial for murder there was no error in State's counsel's closing argument in referring to the fact that defendant while on the witness stand had laughed; this being a fact.

5.—Same—Evidence—Res Gestae.

Upon trial for murder there was no error in admitting testimony that defendant had slapped a third party in the face, just before the homicide occurred and immediately in connection therewith.

6.—Same—Evidence—Declarations by Defendant—Limiting Testimony.

Upon trial for murder there was no error in admitting the declarations of defendant on a former trial in the nature of a confession, and there was no error in not limiting this testimony.

7.—Same—Charge of Court—Argument of Counsel—Husband and Wife.

On trial for murder there was no error in the court's charge with respect to the argument of State's counsel, based on the failure of defendant to place his wife on the witness stand.

**8.—Same—Charge of Court—Express Malice—Murder in Second Degree.**

Upon trial for murder there was no error in a charge, that while the evidence might show express malice, that the jury might nevertheless convict defendant of murder in the second degree.

**9.—Same—Aggravated Assault—Negligent Homicide—Charge of Court.**

On trial for murder where the facts did not justify a charge on aggravated assault, nor on negligent homicide, there was no error in failing to charge thereon.

**10.—Same—Charge of Court—Apparent Danger.**

Where upon trial for murder, the court charged correctly on the appearance of danger, there was no error in refusing defendant's special instruction on this issue.

Appeal from the District Court of Hill. Tried below before the Hon. W. C. Wear.

Appeal from a conviction of murder in the second degree; penalty, twenty-five years imprisonment in the penitentiary.

The opinion states the case.

*Walter Collins, C. L. Block* and *S. M. Smithdeal,* for appellant.—On question of misconduct of jury: Morawitz v. State, 49 Texas Crim. Rep., 366; 91 S. W. Rep., 227; Tutt v. State, 49 Texas Crim. Rep., 202; 91 S. W. Rep., 584; McWilliams v. State, 32 Texas Crim. Rep., 269; Mitchell v. State, 36 Texas Crim. Rep., 278; Terry v. State, 38 S. W. Rep., 986; Darter v. State, 39 Texas Crim. Rep., 40; Horn v. State, 50 Texas Crim. Rep., 404; 97 S. W. Rep., 822.

The Supreme Court of the United States has repeatedly held that a State cannot discriminate, either through its judicial or legislative or executive department, against the negro on account of his race, and on this proposition, the following authorities are cited: Ex parte Va., 100 U. S., 339; Strander v. W. Va., 100 U. S., 303; U. S. v. Rivers, 100 U. S., 313; Neal v. Delaware, 103 U. S., 370; Bush v. Kentucky, 107 U. S., 110; Gibson v. Miss., 162 U. S., 565; Smith v. Miss., 162 U. S., 592; Peo. v. Car Soi, 57 Cal., 102; Pender v. State, 27 Fla., 30.

On question of peremptory challenges and challenges for cause: Cooley v. State, 38 Texas, 638; People v. McQuade, 18 N. E. Rep., 158; People v. Bodine, 1 Denio, 308; Freeman v. People, 4 Denio, 431.

In the cases quoted from above, it is held in effect that the defendant does not have to show on his appeal that he has exhausted all his peremptory challenges before he has the right to call in question a ruling of the court on a challenge for cause. We do not contend that this is the law in this State, but we offer these opinions as showing how the courts regard the question of the right to exercise peremptory challenges. It is held in some jurisdictions that an error in overruling a challenge for cause is good although an objectionable juror was excluded by peremptory challenge and the peremptory challenges not exhausted before the jury was completed. (See Birdsong v. State, 47 Ala., 68; Lithgow v. Commonwealth, 2 Virginia Cases, 297; Iverson v. State, 52 Ala., 170; Dowdy v. Commonwealth, 60 Am. Dec., 314.

*F. J. McCord,* Assistant Attorney-General, for the State.

HENDERSON, JUDGE.—Appellant was convicted of murder in the second degree, and his punishment assessed at twenty-five years in the penitentiary; and prosecutes this appeal.

This is the third apeal of this case, appellant having been tried twice before, convicted, and his case reversed. For a report of the facts on former trial see Moore v. State, 7 Texas Ct. Rep., 17; 44 Texas Crim. Rep., 526; 72 S. W. Rep., 595; and 8 Texas Ct. Rep., 116. The facts on this trial are substantially the same as on the former trials. Briefly stated, it is shown, on the part of the State, that appellant was paying attention to one, Susie Jones, and was engaged to marry her. On the night of the homicide Mat Hunt, deceased, made an engagement with Susie to accompany her from the church to where she lived at the residence of one Bowman. Appellant objected to her going home with Hunt, and insisted on going with her himself; she refused, however, to leave Hunt and go with appellant. Appellant then went with Mary Roberts, a sister of Susie Jones, who lived also at the Bowman residence. Appellant was told before going, not to go up there and raise a fuss with Hunt. Hunt and Susie preceded them, and when appellant and Mary Roberts arrived they passed the others who were standing or sitting in the yard; appellant and Mary Roberts went into the house; after remaining there a short time, Alex Anderson, a cousin of appellant, came; in a short while he took a pistol out and held it in his lap. Appellant, in the meantime, requested Mary Roberts to tell Susie to come in, which she did, but Susie refused to come in. Alex Anderson asked appellant if he wanted his pistol; appellant at first said he did not, but subsequently said he would take it, and took it and went out where deceased and Susie were sitting; he slapped Susie; deceased rose up, and appellant threw his gun in his face, and said, "Now, nigger, if you have anything to do, do it." Deceased said, "That is all right, A. J.; I am your friend," and appellant then shot him. Appellant testified that when he went out there Susie was sitting in deceased's lap; that he slapped her, and Mat jumped up and put his hand in his pocket, and she (Susie) said, "Don't hurt him," and he (appellant) shot him; that he shot him because he thought deceased aimed to draw a weapon. This is a sufficient statement of the case to discuss the assignments.

In forming the jury appellant claims that the court improperly deprived him of some four or five challenges for cause by holding that the jurors were qualified. It appears that appellant was a negro, and the deceased was also a negro; that the jurors were white men. On the examination of these jurors, they stated that they had some race prejudice against the negro; that they did not entertain the same degree of respect for a negro's testimony, as a general proposition, that they entertained for the testimony of white men. However, they stated they had no prejudice against appellant, and they would accord him a fair trial, and that they would accord him all his rights before the law, and they

stated that they would not convict a negro on less testimony than they would a white man. As illustrative of the attitude of some of these jurors on the question, we quote from the testimony of one of the jurors, which is a fair sample of others: "Q. You feel like you would not give the testimony of a negro testifying in his own behalf the same weight and attach to it the same credibility that you would if he was a white man? A. I couldn't conscientiously. I have not got as much confidence in a negro as a white man. I couldn't be as conscientious with a negro as a white man. I would be perfectly willing to give a negro justice as I would a white man, yet I could not believe the negroes as a race as the white people as a race." He further stated that in the trial he would give a negro all the guarantees which the law accords him, such as the presumption of innocence and reasonable doubt. Some of these jurors testified that they knew or had heard of the former trial and conviction of the defendant. Appellant challenged each of said five jurors for cause, which was overruled by the court, and he afterwards exhausted his peremptory challenges, and was compelled, as he states, to take one J. M. Ivey on the jury who, he says, had knowledge of the former conviction of the defendant. Our statute, as cause of challenge, does not enumerate race prejudice as a ground of challenge, yet in accordance with the Fourteenth Amendment and under the decisions of the Supreme Court of the United States, prejudice against the negro race which leads to discrimination in the formation of either grand or petit juries, is considered sufficient ground to set aside an indictment or a conviction by a petit jury. See Carter v. State, 39 Texas Crim. Rep., 345, and 77 U. S. Rep., 42. However, this question is not directly involved. In Lester v. State, 2 Texas Crim. App., 432, it was held where a white man was on trial for the murder of a negro, it was proper to permit the State's counsel to ask jurors if they could return the same kind of verdict against a white man for killing a negro as they could against a white man for killing another white man upon the same evidence, and if he could not, that this would afford ground for challenge of the juror. See Williams v. State, 44 Texas, 34, and Fendrick v. State, 39 Texas Crim. Rep., 147. The five jurors interrogated, stated distinctly that they had no prejudice against appellant, but they did state that they would not accord to a negro the same degree of credit, as to his testimony, that they would to a white man. While the bill does not show that any white witness testified in the case, yet there was one white witness who did testify for the State to wit: Bowman. But even if we could review the testimony of this witness, in connection with the bill, it does not occur to us that he testified to anything of a material character. So that, as it occurs to us, there was no conflict as between his testimony and the defendant's witnesses, and it does not occur to us that under the circumstances the race question, or the fact that the jurors might give more weight to the testimony of a white person than a negro, would have any effect in this case. Aside from this, however, we do not believe that it is shown that Ivey, whom appellant says he was

compelled to take, was an objectionable juror. Appellant says in his bill that Ivey was objectionable to him because he knew of a former conviction of appellant. It seems that on the examination of this juror, after the verdict, he states that he knew or had some idea that appellant had been formerly convicted for the same offense, but that he made no suggestion of this matter in the jury room, and had no recollection that the matter was suggested. We do not believe this was a prejudiced juror, and it is not shown that he was an unfair juror.

Appellant complains of the misconduct of the jury in regard to discussing in the jury room the fact that appellant had been formerly convicted of the same offense. Appellant had some nine of the jurors summoned on this issue, and they were examined; nearly all of these jurors stated that so far as they knew or recollected no allusion was made to any former verdict. A number of them stated that they did not know until after they had rendered a verdict that appellant had been previously convicted. There was some testimony in the case showing former trials of appellant, but no evidence directly showing a conviction. The juror Costan stated that he did not know that defendant had been convicted until after they had rendered a verdict. Ivey stated that he supposed appellant had been convicted, but heard nothing said about it in the jury room. Terry stated he had no recollection of having heard any discussion of a former trial and conviction of appellant in the jury room. This juror states there were several ballots taken in arriving at appellant's punishment, after they had determined that appellant was guilty of murder in the second degree; on the first vote, two gave defendant ten years, eight were for twenty years, and two for twenty-five years; on the second or third ballot they agreed on twenty-five years. This juror further stated that it was possible he got his idea of appellant's former conviction from the testimony during the trial; that witnesses testified about a former trial. Conover stated that he had heard appellant had been formerly convicted, but did not know whether he had or not; that he remembered stating in the jury room that he heard appellant had been formerly tried, but there was no discussion of any former conviction. Walker stated that he did not know before he went in the jury box that appellant had been formerly convicted, but he understood during the trial of the case that appellant had been formerly tried from an examination of the witnesses as to their evidence on a former trial, and that it seemed to him that he knew appellant had been convicted in a former trial. McMurry stated that he did not know that appellant had been formerly convicted. Patterson stated that he did not know and never heard a word said about it in the jury room. Lusk stated that he believed he knew of appellant's former conviction during the trial, but did not hear it discussed in the jury room. Inman stated that he believed he heard some talking about appellant being sentenced before, that he heard he had been convicted twice; that something was said in the jury room about it, but he did not know who said it or what was said. The bill shows that Hardeman, Bottom and Jaggers were

not examined. Hardeman was in attendance on the court but was not put on the stand; that Bottom and Jaggers were not in attendance on the court; that it was reported that Jaggers was sick. In connection with the bill it is shown that each of the jurors, before he was taken on the jury, stated that he did not know whether defendant had ever been tried before, and there was no evidence introduced showing that defendant had ever been convicted before, but it was proved during the trial that he had previously been tried. It was also shown by the juror Inman that after someone, he did not know who, stated in the jury room that defendant had been formerly convicted, Jaggers, who had previously been for fifteen years, went up to twenty years, but the witness, Inman, stated that the remark was not made by Jaggers, and he did not know that Jaggers heard the remark.

Does this record show such misconduct on the part of the jury as requires a reversal of this case? Article 823 prohibits the allusion, in a subsequent trial, to a former conviction in argument, and this has been held to extend to any argument or discussion of a former conviction by the jury in the jury room. See Horn v. State, 50 Texas Crim. Rep., 404, 17 Texas Ct. Rep., 271. But it has been held that where there was a mere casual or accidental allusion to a former conviction, and no discussion of the same was had, that it will not afford cause for reversal. See Baines v. State, 43 Texas Crim. Rep., 490; 66 S. W. Rep., 847, and Gaines v. State, 8 Texas Ct. Rep., 616. Here it seems there was evidence before the jury of a former trial. It also appears that some of the jurors knew of the former conviction, but it does not appear that any discussion was had of this matter in the jury room, and the most that can be said is that it was casually referred to, and it does not seem to have made any impression on any member of the jury. We do not believe, under the circumstances, that this was such misconduct as ought to reverse this case.

It appears that during the trial of the case, and about the time the jury was impaneled, that the State made a motion to have entered an order substituting the lost indictment, nunc pro tunc, the motion showing that the court at a previous term had substituted the lost indictment, but that the order of substitution embraced in the minutes of the court had not been signed by the presiding judge. The exceptions to this action of the court embraced various matters to the effect that appellant had no notice of the nunc pro tunc motion, and that the motion included matters not a part of the nunc pro tunc judgment, but contained other matters. With reference to the question of notice, it occurs to us that this procedure was not necessary; that the order on the minutes of the court was valid though not signed by the judge. The fact that said order nunc pro tunc may have embraced other matters would not invalidate it as to matters which it should have included.

Appellant reserved a bill of exceptions to the action of the court in permitting the county attorney, in his closing argument, to refer to the

fact that appellant, while on the witness stand in his own behalf, laughed. The court shows that this conduct of appellant actually occurred, and we see no error in the State's counsel referring to same.

We do not believe there was any error in the court permitting the witness Baker to testify that defendant slapped Susie Jones down at the church. This might be said to be a part of the res gestæ of the case. The homicide occurred immediately in connection therewith, and shortly afterwards, and in regard to Susie Jones; nor was there any error in the conduct of the State's attorney with reference to eliciting said testimony.

Appellant saved a bill of exceptions to the action of the court in refusing to limit the testimony of C. F. Greenwood. C. F. Greenwood testified as to what appellant testified to on a former trial. Appellant's testimony related to a material fact in the case, and was original testimony in the nature of a confession, and it was not required of the court that he limit same.

It was not error on the part of the court to charge the jury with respect to the argument on the part of the State, based on the failure of appellant to place his wife on the stand. This has been decided by this court in a number of cases.

It was not error on the part of the court to instruct the jury that although the evidence might show appellant guilty of murder upon express malice, yet that would constitute no reason for his acquittal; that they could on such testimony find him guilty of murder in the second degree.

There was no occasion for the court to charge on aggravated assault, nor on negligent homicide. The facts did not justify a charge on either subject.

Appellant complains that the court in the tenth paragraph of his charge, misdirected the jury. This charge in effect was an instruction in favor of defendant on the appearance of danger, and in our opinion was a correct charge on the subject. We do not believe it was necessary for the court to have given appellant's refused instructions; so far as applicable, same were covered by the court's charge.

There being no errors in the record, the judgment is affirmed.

*Affirmed.*

[Motion for rehearing overruled at Dallas term, February 12, 1908, without written opinion, which was too late to include this case among the Austin term cases of 1907.—Reporter.]