## Tom Ross v. The State.

No. 8609.   Delivered October 6, 1924.

Rehearing denied January 7, 1925.

**1.—Murder—Continuance—For Plea of Jeopardy—Refused.**

Preliminary to the trial appellant made a motion to postpone the trial, pending final disposition of the prosecution pending against appellant for the killing of Allison, in which case a penalty of confinement in the penitentiary for thirty-five years was assessed against him. He contended that the killing of Allison and Roberson constituted but one transaction. The same legal question arose, and was discussed at some length in the companion case of Milt Good v. State No. 8606. The principle of law which appellant seeks to invoke, in our judgment does not apply, to the facts in this case. The rule of law relied upon is that which denies the state the right to maintain two prosecutions against one for his single act, by which he slays two persons, with no intent to kill but one.

**2.—Same—Co-conspirators—Declarations of—Admissible.**

Appellant complains of the admission of certain declarations, made by his co-defendant, Good on Friday afternoon preceding the homicide on Sunday. A conspiracy between appellant and Good, having been shown to kill deceased, and appellant and Good having acted together in the commission of the homicide, the application of the rules of evidence, controlling the declarations of co-conspirators, becomes operative. See Branch's Ann. Tex. P. C., secs. 693 and 694.

**3.—Same—Evidence—Motive.**

The fact that Good and appellant were under indictment for cases charging them with cattle theft, due to the activities of deceased, in which deceased was a witness against them, together with their concerted action in preparing for and committing the homicide, was admissible in showing motive.

**4.—Same—Collateral Issues—Charge of Court—Restricting.**

The general rule which requires that when evidence of collateral offenses is relevant upon the particular issue, there should be an instruction to the jury restricting its use to that issue, does not ordinarily obtain, when such evidence is received upon the issue of motive.

**5.—Same—Evidence—Cross-Examination.**

Appellant by the witness Calloway, introduced by him, showed that he had written certain letters to some one, upon information that he had received from two persons, whom he named. The state on cross-examination was properly permitted to show that one of the persons upon whom he relied, was not available because he was absent from the state, and that the other was under indictment for theft of cattle.

**6.—Same—Misconduct of Jury—Discussing Other Convictions.**

During the deliberations of the jury, it was stated by one of the jurors that appellant had been convicted in the companion case, in which his penalty was fixed at confinement for thirty-five years. It appears from the record, before they were selected, the members of the jury had knowledge of the previous conviction of the appellant, and they disclosed that fact upon their voir dire. In the light of all of the facts revealed, appellant does not show such misconduuct of the jury that would warrant us in reversing the cause.

Appeal from the District Court of Taylor County. Tried below before the Hon. W. R. Ely, Judge.

Appeal from a conviction of murder; penalty, twenty-five years in the penitentiary.

The opinion states the case.

*W. H. Bledsoe, G. E. Lockhart, McLean, Scott & Sayers,* and *Cunningham & Oliver,* for appellant.

*Dayton Moses, Tom Garrard,* State's Attorney, and *Grover C. Morris,* Assistant State's Attorney, for the State.

MORROW, Presiding Judge.—The conviction is for murder; punishment fixed at confinement in the penitentiary for a period of twenty years.

While sitting in the lobby of the Gaines Hotel in the town of Seminole, Gaines County, Texas, H. L. Roberson and W. D. Allison were shot and killed. Appellant and Milt Good fired the shots which caused the deaths of the decedents.

The State's testimony was to the effect that neither Allison nor Roberson made any demonstration before the shooting and would lead to the conclusion that they were shot before they were aware of the presence of their assailants.

According to the appellant's testimony, he had had no difficulty with Allison or Roberson; that his purpose in going to Seminole was to see a lawyer to prevent the grand jury, which was to meet on the following day, from finding indictments against him. He was not aware that either Roberson or Allison were at the hotel. Indictments for cattle theft had been found against him in other counties, and he had been told that Roberson had gone on his premises and "choused" his cattle around; that he had also been endeavoring to secure evidence of cattle theft against the appellant; that Roberson had threatened to send him to the penitentiary or kill him; that he had been warned by several persons that Roberson had made threats to do him injury; that he had been informed that Roberson had said that the appellant and Milt Good had been stealing cattle together; that in consequence of this information he had been in the habit of going armed, both with a rifle and shotgun; that he had learned that Roberson had killed a number of persons, as to some of whom the witness gave details; that riding in his car, he and Good left the home of the appellant in the evening of April 1st. The car of the appellant, according to his testimony, was driven to a point near the hotel. Appellant had with him a six-shooter, two Winchesters and a shotgun. Good was also armed. Appellant and Good left the car and entered the hotel building through the front door. Upon opening the door, he saw Roberson, Allison, and

some other parties who were in the room. Good said, "Look out for Allison." Roberson was the first person that appellant saw. Quoting the appellant, he said:

"He gave me a look on his face that I never will forget. * * * He started to raise up with his hand over this way (indicating), and I commenced shooting as quick as I could shoot. I do not know how many times I shot him."

He saw Roberson's hands and head fall back against the wall. He did not see Allison until he fell out on the floor, and did not shoot him. Good had a shotgun as they entered the room. Appellant said that when he first saw Roberson, he believed he would kill him; that he reached with his right hand and moved his left. Good was shooting at the same time, using a shotgun. He saw Milt Good at Seagraves on Friday evening before the killing, and he and Good went to the appellant's house together. They spent part of Saturday and Sunday together looking at yearlings.

Gordon McGuire, the district attorney for the district in which the counties of Lynn, Dawson, Hockley and Gaines are situated, testified that Roberson and Allison were employees of the Cattle Raisers' Association, charged with the duty of looking after alleged cattle theft cases; that they were witnesses before the grand juries which found indictments against appellant and Good in Lynn, Dawson, Hockley and Gaines counties; that they investigated the alleged cattle thefts and made reports to the grand juries. As a result of these investigations six indictments were found against Milt Good in Lynn, Dawson, and Hockley counties. Indictments had also been made by Roberson with reference to cattle thefts in Gaines county by the appellant Ross. The district court was about to convene on Monday following the homicide on Sunday. M. Wilhoit was the owner of cattle which were the subject of the charge against Ross in Gaines county. Indictments against Ross for the theft of cattle in Lee County, New Mexico, were introduced in evidence by the State.

McGuire testified that while sitting in the lobby of the hotel something was attracted to his attention by the door which partly opened. He observed a gun barrel coming through the door and point towards Roberson. He heard a shot fire and then saw Roberson's head fall back. He also heard a number of shots fire. They were fired by Ross and Good. He saw Allison fall from his chair. When Allison fell out of his chair, Good stepped over to his body and fired at it. After the shooting, Ross commanded that the parties be quiet; that no one leave the room.

Preliminary to the trial, the appellant presented and the court overruled, a motion to postpone the trial until the final disposition of the proposition pending against the appellant for the murder of Allison, in which case a penalty of confinement in the penitentiary for thirty-five years was assessed against him. He advanced the theory that the

killing of Allison and Roberson constituted but one transaction, and that the conviction of the appellant for killing Allison upon the theory that he acted as a principal offender with Milt Good, precluded his conviction of the murder of Roberson. The same legal question arose and has been discussed at some length in the companion case of Milt Good v. State, No. 8608. A comprehensive review of the subject will not be attempted here. The principle of law which appellant seeks to invoke does not, in our judgment, apply to the facts. Appellant was convicted of the murder of Allison upon the theory that he and Good acted together as principal offenders and co-conspirators; that there was an intent to kill both Allison and Roberson. The rule of law relied upon is that which denies the State the right to maintain two prosecutions against one for his single act, by which he slays two persons with no intent or volition to kill but one. See Spannell v. State, 83 Texas Crim. Rep., 423; 18 Amer. Law Rep., p. 919, note; also precedents cited in the Spannell case, supra.

On Friday afternoon preceding the homicide on Sunday evening, Milt Good left his home at Brownfield and traveled by rail a distance of twenty-eight miles to Seagraves, where he met the appellant Ross. They went together to the home of the appellant and remained in company with each other for the greater part of the intervening time until Sunday evening when, riding in the appellant's car, they went together to Seminole and to the hotel at which Roberson and Allison were killed. In the car were a number of firearms and ammunition. Appellant and Good walked to the door together and the shooting took place as described above.

When in the act of leaving Brownfield, Good had a conversation with the witness Detro in which he said among other things, that he was going to Seminole and was "rearing to go there;" that he was going to whip some one or get whipped; "that he did not know but what he was looking for trouble." To the introduction of that part of this testimony objection was made that it was a mere vague and general statement of Good, not directed towards the deceased, or relevant to any issue in the case, and was therefore inadmissible. The same question has received attention in the companion case of Good v. State, No. 8608.

Appellant and Good having acted together in the commission of the homicide, the application of the rules of evidence controlling the declaration of co-conspirators becomes operative. From Wharton's Crim. Ev., Vol. 2, Sec. 919, the following quotation is taken:

"Where the preceding circumstances or difficulties in homicide prosecutions tend also to show conspiracy or concert of action, great latitude is allowed in the relevancy of the circumstances that show confederation. The rule as to the relevancy of the acts and declarations of one conspirator, as original evidence against all of the conspirators, applies in criminal cases as in civil cases, and this rule is universal. The

relevancy of such testimony is not affected by the fact that all the conspirators were not present when the acts were done or the declarations made, or that certain of the accused did not know of or concur with them at that time, if they are afterwards connected with the conspiracy by relevant evidence, as the knowledge of one conspirator is imputed to all.. The relevancy of such testimony is not affected by the fact that the preparations made for the crime were not the means actually used in committing it, nor is its relevancy affected by the particular time that the accused joined in the conspiracy.

It is essential, however, to the relevancy of circumstances preceding and contemporaneous with the concerted action, that a conspiracy should have been formed or concerted action shown, otherwise the acts and declarations of one member is inadmissible against the others. *But when the concert of action is once established, all of the facts and circumstances, which precede and connectedly lead up to the homicide, are relevant."*

The precedents and principles pertaining to this subject were reviewed in the opinion of this court written by Presiding Judge White in the early case of Cox, et. al. v. State, 8 Texas Crim. App. 278. The question was again reviewed in the opinion of this court, written by Judge Henderson in the case of Smith v. State, 48 Texas Crim. Rep. 232, from the fourth subdivision of the syllabus of which we quote:

"The rule laid down by this court in the case of Cox v. State, 8 Texas Crim. App., 254; that when the proof shows two persons were acting together with an unlawful intent in the commission of an offense, the common design and declarations of each or any such principal offender, in pursuance of the agreed plan, and tending to throw light upon it, or the motive or intent with which it was committed is and should be received as legal evidence against each and all, whether indicted, prosecuted and tried jointly or separately, not only still obtains, but has been extended in the light of more recent decisions, which hold that on a trial for murder where a conspiracy is shown, the acts and declarations of co-conspirators are admissible to prove the common design, purpose and intent of all the conspirators, whether such acts, etc., were made before or after the formation of the conspiracy, or whether the same were made before the defendant on trial entered into the conspiracy."

The reports are replete with illustrations of the views of the judges of this court touching all phases of the rule applicable to the admissibility in evidence of the declarations of one co-conspirator against another. See Branch's Ann. Tex. P. C., Secs. 693 and 694.

The declaration of Good explanatory of his state of mind and his purpose in going to Seagraves, under the rule stated, was admissible upon the trial of the appellant. The declaration that he might be looking for trouble; that he was going to whip somebody or get whipped, followed by his meeting with the appellant, their associations during

the intervening time, their concert of action in going to the place of the homicide, their acting together in its preparation, their grievances against the decedents Allison and Roberson, their common interest in preventing indictments against them in Gaines County and obviating convictions upon the indictments previously obtained upon the testimony of Roberson and Allison was illustrative of the intent with which Good acted with the appellant in taking part in the homicide. By entering the conspiracy and acting with Good in killing the decedents, the motive of Good, revealed by the declaration, was relevant against Ross. See Wallace v. State, 46 Texas Crim. Rep. 341; Hudson v. State, 43 Texas Crim. Rep. 421; Rose's Notes on Tex. Rep., Vol. 6, p. 112.

The fact that Milt Good, as well as the appellant, was under indictment for cattle thefts due to the activities of Roberson and Allison and that Roberson and Allison were witnesses against them in these prosecutions, together with the evidence of their concerted action in preparing for and in committing the homicide, their presence and co-operation therein, warranted the court in receiving in evidence the several indictments against Good which had previously been found by the grand juries of the several counties in which the judicial district in Gaines County was situated, as well as the indictment against the appellant found in the adjoining state of New Mexico.

The fact that there were indictments against the appellant and that Roberson and Allison had been instrumental in bringing about the indictments and were witnesses against the appellant and Good was properly received. The evidence showing that in committing the homicide, appellant and Good acted in concert, rendered the evidence mentioned admissible upon the issue of motive. The general rule wihch requires that when evidence of collateral offenses is relevant upon the particular issue, there should be an instruction to the jury restricting its use to that issue, does not ordinarily obtain where such evidence is received upon the issue of motive. A case in point is Harrelson v. State, 60 Texas Crim. Rep. 535. In that, a murder case, the deceased had charged Harrelson with theft. This fact was proved. Harrelson complained that it was not limited. The court, speaking through Judge Ramsey, said:

"We think it would have been manifestly improper for the court to have limited this testimony. It was introduced, among other things, and was clearly admissible, for the purpose of showing animus, motive and resentment on the part of appellant and as furnishing a reason for his hate, dislike and ill-will. Sullivan v. State, 31 Texas Crim. Rep. 486."

"Where, as in this case, charges against a defendant by a deceased, similar to the one here in evidence, are offered as supplying and furnish motive, and as part of the State's affirmative and original or

primary proof of guilt, no limiting charge is either required or proper to be given. This rule is not only sound in legal reason, but is directly supported by the decisions."

The same construction of the rule was made by the court in Wright v. State, 56 Texas Crim. Rep. 359, in which the death penalty for murder was affirmed. A number of cases are cited. Among them are the opinions of Judge Davidson in Moseley v. State, 36 Texas Crim. Rep. 581, and of Judge Hurt in Thornley v. State, 36 Texas Crim. Rep. 119. In the present record, we have failed to perceive any fact warranting the conclusion or inference that there was danger that the jury might have convicted the appellant of theft or make other misuse of the evidence properly received upon the issue of motive. This matter is discussed in the companion case of Good v. State, No. 8608, to which we refer.

The relevancy or materiality of the testimony adduced by the appellant from the witness Calloway, set out in Bill of Exceptions No. 4, is not made clear by the bill. It seems, however, that the appellant introduced Calloway to show that he had written certain letters to some one upon information that he had received from two persons whom he named. Apparently it was not an abuse of the right of cross-examination for State's counsel to elicit from the witness Calloway that one of the persons upon whom he relied was not available because of his absence from the State and that the other was under indictment for the theft of cattle. As stated above, we do not compre‧hend from the bill of exceptions the importance of Calloway's testimony, and for that reason we would not be authorized to order a reversal of the judgment, even though the cross-examination had not been proper. It does not, however, occur to us to have been improper for the reason that the status of the persons upon whom Callaway relied in stating his conclusions was a matter which it was competent for the State to elicit in order that the jury might appraise the value of the opinion or information given by the witness.

A new trial was sought upon the ground that after retirement there was an unauthorized discussion of the former conviction of the appellant in the companion case in which his penalty was fixed at confinement for thirty-five years. As we understand it, the law, as applicable to this character of complaint, is embraced in several of the articles of the statutes of this State. In subdivision 7 of Art. 837, C. C. P., it is said that a new trial shall be granted "where the jury, after having retired to deliberate upon a case, have received other testimony." Subdivision 8 of the same statute reads thus:

"Where, from the misconduct of the jury, the court is of opinion that the defendant has not received a fair and impartial trial; and it shall be competent to prove such misconduct by the voluntary affidavit of a juror; and a verdict may, in like manner, in such cases be sustained by such affidavit."

In Article 843, C. C. P., it is said:

"The effect of a new trial is to place the cause in the same position in which it was before any trial had taken place. The former convictions shall be regarded as no presumption of guilt, nor shall it be alluded to in the argument."

The facts in a given case calling into operation these statutory provisions are, of course, determinative of the questions involved. In subdivision 7, Art. 837, the inhibition is against the *receipt of new evidence after the retirement of the jury;* in subdivision 8, *misconduct is not defined, but judicial discretion is conferred upon the trial court to determine on the facts of each case whether the alleged misconduct is proved and whether its effect was to deprive the accused of a fair trial.* Where the averment and proof show the *receipt of new evidence of a material nature, the presumption is injury obtains unless the contrary is made to appear.* In this connection, if the proof of the new evidence is conflicting, the conclusion of the trial court will not be overturned. Todd v. State, 93 Texas Crim. Rep. 559. If its materiality is doubtful, the discretion of the trial court in approving the judgment will prevail. Holt v. State, 51 Texas Crim. Rep. 15; Douglass v. State, 58 Texas Crim. Rep. 122; Reese v. State, 87 Texas Crim. Rep. 247. In McDougal's case (81 Texas Crim. Rep. 181) the evidence before the trial court on the motion for new trial was conclusive to the point that the result of a previous trial of McDougal for the same offense was unknown to the jurors generally until one of their members revealed it during the deliberation. There was a difference of opinion touching the matter of punishment, and the information thus given was used and applied to bring about the verdict rendered. This was held violative of both Art. 837, subdivision 7, and Art. 843, supra. Subdivision 8 of Art. 837 was not specifically nor necessarily involved. In the opinion in the McDougal case, supra, the language of this court in deciding the case of Smith v. State, 52 Texas Crim. Rep. 344, was quoted with approval. That is to say, the court in McDougal's case recognized the soundness of the declaration of the court, speaking through Judge Ramsey, in the Smith case, wherein it was said:

" * * * a verdict ought not to be set aside for every incidental and casual mention of a former trial or a former conviction, and that in no case shoul dit be set aside in a case tried according to law where the conviction is supported by the testimony, unless the court may fairly and reasonably see in the light of all the circumstances that such reference and discussion did or might have prejudiced the appellant's case."

The language quoted is now regarded as stating a sound rule and one which should be followed, but one which is in no sense opposed to the rule that where the fact of the former conviction or its result comes to the members of the jury as *new evidence* after their retire-

ment, the burden is upon the State to show the absence of injury. This is not to be shown by the mere conclusion of the juror that he was not influenced by the new fact.

To sustain his averment the appellant relied upon the testimony of the juror Hay. From his testimony we understand that he was aware of the former trial and that it resulted in a verdict of guilty. He understood that the penalty assessed was confinement in the penitentiary for a period of twenty-five years. A contrary inference might be drawn from his direct examination, but upon his cross-examination, he made the statement which we quote:

"I stated that I had heard of that trial. I knew as a matter of fact that he had been convicted of murder at Lubbock. I stated that that fact would not influence my verdict one way or the other; the fact that he had been tried at Lubbock. I stated that I would render my judgment or decision based solely upon the testimony introduced here on this trial. That is what I said. That is what I said under my oath at that time.

The facts are that I had heard before I went on the jury that Ross had been convicted and I thought he had received twenty-five years. I thought it was twenty-five years. That was the way I heard it."

From the re-cross examination of the jury, we also quote:

"Now, before I was selected, the information I had was, or what I had in mind was, that Ross had received twenty-five years at Lubbock and in the jury-room I heard it was thirty-five."

Upon the first ballot Hay voted not guilty. The other members of the jury voted for a conviction with a penalty of fifty years. Nine of them, however, indicated the willingness to assess the death penalty. Subsequently, Hay, before there had been any mention of the former trial, concluded that under the evidence it was his duty to convict the appellant of murder, but he regarded five years as the proper penalty.

If we comprehend the record, before they were selected, the members of the jury had knowledge of the previous trial and conviction of the appellant, and they disclosed that fact upon their voir dire.

The only substantial difference that has been found in the testimony of Hay and that of the foreman and other jurors is this: Hay claims that when the ballot was taken, all of the jurors except himself favored a verdict of fifty years; that the foreman took him to task and demanded to know whether he would put his judgment against eleven, when some juror remarked: "Yes, against twenty-three;" that in this conversation the suggestion was made by one of the jurors that the verdict should not be less than that assessed in the other case. The testimony of the foreman and other jurors upon this point was that the foreman asked Hay if he would put his judgment as to the penalty against eleven, when some juror remarked: "Against twenty-three; the penalty on the other trial was thirty-five years." The foreman im-

mediately stated to the jurors, in substance, that the discussion of the former trial was entirely out of order and was not to be considered; that they must refrain from any discussion of it. From the testimony, aside from that of Hay, the trial judge was authorized to find that the matter was mentioned but once during their deliberations.

The action of the trial judge in overruling the motion for new trial is binding upon this court as a decision in favor of the State of all matters upon the hearing of the motion upon which there is a substantial conflict of evidence. It therefore occurs to us that such remarks as were made in the jury-room concerning the previous trial of the appellant added to the store of knowledge possessed by Hay no fact he did not know at the time he was selected as a juror. He had been accepted as a juror upon his statement on voir dire that his knowledge of the previous trial would have no weight in making out his verdict.

If our interpretation of the facts revealed upon the motion for new trial is accurate, we are constrained to regard the action of the court in overruling the motion supported by many well-considered opinions of this court. Among them may be mentioned Fox v. State, 53 Texas Crim. Rep. 155, 109 S. W. Rep. 370; Smith v. State, 52 Texas Crim. Rep. 351, 106 S. W. Rep. 1161; 15 Amer. & Eng. Ann. Cas., 357; Moore v. State, 52 Texas Crim. Rep. 341. These cases have been followed in more recent decisions. Among the latter are Patterson v. State, 221 S. W. Rep. 601; Oates v. State, 56 Texas Crim. Rep. 592; Arnwine v. State, 54 Texas Crim. Rep. 213; Wood v. State, 217 S. W. Rep. 1037; Hallmark v. State, 230 S. W. Rep. 697; Mann v. State, 204 S. W. Rep. 435; Burge v. State, 73 Texas Crim. Rep. 510; Ferguson v. State, 253 S. W. Rep. 290.

In view of the conflict of evidence and the decision of the trial judge, it must be assumed that the mention of that which was previously known to the jurors was made but a single time after the jury agreed on the guilt of the appellant and that the reference was promptly reprimanded by the foreman and all discussion of it suppressed.

The verdict of the jury is supported by the evidence and the decision of the trial court that the accused was not prejudiced by what took place in the jury-room after retirement. This court, therefore, would not be warranted in annulling it because of the reference in retirement by a member of the jury to the conviction of the accused in a companion case, of the result of which trial the jurors were aware with the knowledge of the accused, at the time of their selection, and which reference was made after the guilt of the appellant was agreed upon; and it appearing that discussion was pretermitted in response to the admonition by the foreman that it was not admissible.

For this court, under the record, to overturn the verdict would be to oppose a principle of law which it understands to have often been announced in the decisions of this court to which reference has been made, notably Smith v. State, 52 Texas Crim. Rep. 351; Moore v.

State, 52 Texas Crim. Rep. 336; Fox v. State, 53 Texas Crim. Rep. 155.
The judgment is affirmed.

*Affirmed*.

ON REHEARING.

LATTIMORE, Judge.—Appellant is not satisfied with our disposition of his complaint of refusal of his motion to postpone or continue. He had been convicted in Lubbock county for the murder of Allison and from that judgment had appealed to this court. Asserting his right to plead former conviction in the event said case was affirmed, and his inability to make such plea at the time of this trial because no final judgment had been entered in said other case, he asked a postponement or continuance until the higher court should have acted. Such plea should not only contain full and complete averment, but should be supported by such showing as would satisfy the courts that the offense for which he had been convicted, and the one for which he was now brought to trial, were identical in the eyes of the law. Should he fail either on the presentation of his motion or on the trial of the case to so legally identify the offenses, he would have no good ground for his contention.

That a man who kills two others by one act is guilty of but one homicide, is not doubted. Sadberry v. State, 39 Texas Crim. Rep. 466; Spannell v. State, 83 Texas Crim. Rep. 423. But one who by one shot kills one person and by a separate shot kills another, can not on such showing sustain a plea of former jeopardy, conviction or acquittal. Augustine v. State, 41 Texas Crim. Rep. 59; Taylor v. State, 41 Texas Crim. Rep. 569; Ashton v. State, 31 Texas Crim. Rep. 482. The facts in the instant case show, as stated above, that appellant's former conviction was for killing of Allison by appellant's companion, Milt Good. The conviction was based on the theory of principals and an acting together between appellant and Good in that killing. The present conviction is had because of appellant's admitted shooting of one Roberson who was in the same room with Allison. There is no claim that one and the same shot killed both men, but the contrary is admitted. We do not think under these facts the trial court erred in declining to grant appellant's motion to postpone or continue.

The only other complaint is of our conclusion in regard to alleged misconduct of the jury. We have again carefully reviewed this matter and are in no way led to doubt the correctness of our opinion holding it not reversible error.

The motion for rehearing will be overruled.

*Overruled*.